UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADAM JAMES HITSMAN,

                    Petitioner,                    Case No. 1:15-cv-810

v.                                        Honorable Paul L. Maloney

MARY BERGHUIS,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded no contest in the Ottawa County Circuit Court to one count of kidnaping, MICH. COMP. LAWS 750.349, and one count of third-degree criminal sexual conduct (CSC III), MICH. COMP. LAWS § 750.520d(1)(b), in exchange for the dismissal of one count of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), and for a minimum sentence on the kidnaping offense of 16 years. On August 20, 2012, the court sentenced Petitioner to imprisonment for 16 to 20 years on the kidnaping conviction and 2 to 15 years on the CSC III conviction. In his petition, filed by counsel, Petitioner raises one ground for relief, as follows:

     I.      THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED DEFENDANT-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS GUARANTEES WHEN IT DENIED HIS REQUEST TO WITHDRAW HIS NO-CONTEST PLEA OF GUILTY BEFORE SENTENCING WHEN DEFENDANT-APPELLANT MAINTAINED HIS INNOCENCE, BELIEVED HIMSELF TO BE THREATENED, AND WHERE TRIAL COUNSEL HAD BEEN INEFFECTIVE BY MAKING STATEMENTS DURING THE PLEA

WITHDRAWAL MOTION THAT HE HAD TO HAVE KNOWN WOULD
CAUSE THE COURT TO DENY THE MOTION.

(Br. in Supp. of Pet., ECF No. 2, PageID.6.)  Respondent has filed an answer to the petition (ECF

No. 8) stating that the ground should be denied because it is without merit.

In December 2015, Petitioner moved to stay these proceedings and hold the petition

in abeyance while he returned to state court to exhaust a new claim, premised on actual innocence,

in light of the victim's affidavit recanting her earlier accusations.  I find that the motion for stay and

abeyance should be denied.  Further, upon review and applying the AEDPA standards, I find that

Petitioner's original habeas ground is without merit.  Accordingly, I recommend that the petition be

denied.

## **Procedural History**

### A.      **Trial Court Proceedings**

The state prosecution arose from Petitioner's sexual misconduct with a 12-year-old

girl who lived in his neighborhood.  The girl alleged that Petitioner had penetrated her vagina with

his penis and fingers.  When the child's mother attempted to get into the bedroom to free her

daughter, she could not do so because Petitioner had blocked the door with a dresser.  Petitioner was

charged with one count of first-degree criminal sexual conduct on August 12, 2011.  On the date

before trial was scheduled to begin, March 5, 2012, both parties represented that they had anticipated

entering a plea, but the plea bargain had ultimately been turned down.  Defense counsel Joseph

Legatz requested that the court appoint a new attorney for Petitioner on undisclosed ethical grounds.

The court made a record of the proposed plea agreement, which was being withdrawn at that time.

The offer was to withdraw the CSC-I charge, which carried a 25-year minimum sentence, in

exchange for a plea to CSC III and kidnaping, with a maximum minimum sentence of 16 years on the kidnaping charge.  (3/5/12 Hr'g Tr., ECF No. 9-2, PageID.97-98.)

The court appointed new defense counsel, James Piper.  (*Id.*, PageID.99.)  The trial was rescheduled for June 13, 2012.  On June 11, 2012, Petitioner pleaded nolo contendere to the same plea agreement that he had previously rejected:  pleading guilty to charges of kidnaping and CSC III, with an agreement for a 16-year minimum sentence on the kidnaping charge, in exchange for the dismissal of the CSC-I charge.  (6/11/12 Plea Hr'g Tr., ECF No. 9-4, PageID.107-129.)

On August 20, 2012, the date scheduled for sentencing, Petitioner appeared and was newly represented by attorney Damian Nunzio.  The victim and her mother appeared by telephone, though the victim did not make a presentation to the court.  Instead, her mother, Angelitha Taylor, described the significant behavioral changes exhibited by her daughter, including panic attacks and a personality transformation from bubbly and open to reticent and untrusting.  (8/20/12 Sentencing Hr'g Tr., ECF No. 9-5, PageID.141-142.)  Taylor also read a letter from the victim, describing her emotional upheaval and the impact on her family caused by Petitioner's conduct.  (*Id.*, PageID.143.)  After the victims' remarks, attorney Nunzio represented that Petitioner wished to withdraw his no-contest plea.  Nunzio indicated that he had reviewed the plea proceedings and had no grounds under the rule, other than Petitioner's desire to withdraw the plea because of his dissatisfaction with the length of the sentence.  (*Id.*, PageID.145.)  Petitioner himself then argued that he was under the impression that, when he changed his attorney to Mr. Nunzio, he would start the process again, beginning with the arraignment, and that he would then have an opportunity to take back his plea. He indicated that he wanted to take back his plea on the following basis:

THE DEFENDANT:  On the basis that 16 years is way too dang long because I know I didn't and stuff does not add up.  In the voluntary statement, I didn't even know that I had to give the statement.

THE COURT:  Pardon me?  A voluntary statement?

THE DEFENDANT:  I didn't know it was voluntary.  The detective told me that it was a statement; that I had to put my statement there and sign the bottom, and that's what I did.  I never knew anything else.

(*Id.*, PageID.147.)  In response to Petitioner's statements, Mr. Nunzio indicated that Plaintiff was referring to a document entitled "Voluntary Statement" that contained *Miranda* warnings and admissions by Petitioner, which was signed and dated by Petitioner.  Mr. Nunzio then informed the court that his professional advice was that Petitioner keep the plea agreement, in order to avoid the mandatory minimum of 25 years.  Petitioner then continued to explain his concerns, engaging with the court in the following inquiry:

THE DEFENDANT:  What I don't understand is, like, if I'm such this horrible person, then why every time this child sees my family, they ask how I'm doing and apologize?  And why on earth, you know, if, like, if you -- if, like, somebody -- somebody did this horrible thing to your kid, why would you move closer to them?  She moved into the same trailer park as me.  And I couldn't I couldn't go anywhere.  And I couldn't – I couldn't do anything.  And I didn't -- I didn't even understand my Miranda Rights.  I didn't know about them until after I got out of jail the first time on probation because my dad told them to me.  The officers or the detectives never told me to read anything.

THE COURT:  So, you want to, again, withdraw your plea because – I'm getting a couple of different messages here.  Number one is because 16 years is too long and then you didn't know that your statement was voluntary.  You felt it was involuntary and that you know you didn't do it.  So, is that -- am I accurately stating that or is there a combination of those reasons or is there something else?

THE DEFENDANT:  No.  Like -- like I don't think the 16 years should be there at all.  You know, and, like, what I don't understand is, like, none -- the stuff in the whole case doesn't add up.  It doesn't make sense to me.

THE COURT:  What doesn't make sense to you?

- 4 -

THE DEFENDANT:  Like -- like -- like -- like in the -- in the -- in the -- in the doctor's reports and everything, it showed that -- that -- that all her stuff was still intact and everything and that there was no DNA.  And I didn't understand that 'cuz if I was allegedly said that I did something, wouldn't something show up?  That[']s what I don't -- I don't understand.

(*Id.*, PageID.148-149.)

Having heard Petitioner's reasons for wishing to withdraw his plea, the Court issued

the following ruling:

THE COURT:  All right.  Well, there is a motion to withdraw the no-contest plea, and I note that the court rule addressing withdrawing a plea is MCR 6.310.  The plea was accepted -- the no-contest plea was accepted so this is part (B) Withdrawal After Acceptance but Before Sentence.  And I'll read it verbatim: "After acceptance but before sentence, a plea may be withdrawn on the defendant's motion or with the defendant's consent only in the interest of justice, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea," closed quote.

And Mr. Nunzio indicates that he has reviewed the process and does not view that there was a defect in the process.  So, the issue is whether or not the plea can be withdrawn in the interest of justice.  And I'm looking at an unpublished opinion of the Court of Appeals, *People v Stewart*, number 292609, October 5 of 2010.  It kind of quotes some published opinions.  Once again it reiterates once a trial court accepts a defendant's guilty plea or a plea of no contest, the defendant has no absolute right to withdraw it.  However, if a defendant moves to withdraw his plea, he must establish a fair and just reason and would justify -- that would justify the plea's withdrawal.  Examples include when the plea resulted from fraud, duress, or coercion; when the plea involved erroneous legal advice coupled with actual prejudice to legal rights; or (3) when the bargain on which the plea was based was illusory.

Now, during this process the Court advised the defendant of the minimum and maximum penalties, and, in fact, that there would be a sentencing agreement of a minimum of 16 years.  There was an actual benefit because if he were to go to trial and were convicted of the underlying offense, the mandatory minimum -mandatory minimum would be 25 years.  He entered his plea in open court.  There was a discussion; I recall it.  He had the opportunity to discuss various aspects with Mr. Piper during the plea process.  I have an independent recollection of that and he wished to go through with the plea.

Now, at this point in time, he's indicating that 16 years is too much.  Well, obviously, that is not a good reason.  And he says, 'I know I didn't do it.'  But he wasn't challenging the plea.  He wished me to accept the no-contest plea and now just a naked statement of innocence is not sufficient for the Court to accept a withdrawal of plea at this juncture.

(*Id.*, PageID.149-151.)

The court then sentenced Petitioner in accordance with the plea agreement to 16 to 20 years on the kidnaping conviction and 2 to 15 years on the CSC-III conviction.  (*Id.*, PageID.153-154.)

## B.    Direct Appeal

Petitioner sought leave to appeal to the Michigan Court of Appeals.  His brief, which was filed by counsel on January 31, 2013, raised the issue presented in this application for habeas corpus relief, together with a claim that the sentence was an unexplained departure from the sentencing guidelines and was disproportionate under the Eighth Amendment and Michigan law, which is not presented on habeas review.  (*See* Def.-Appellant's Br. on Appeal, ECF No. 9-6, PageID.168.)  In an unpublished order issued on October 8, 2013, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented.  (10/8/13 Mich. Ct. App. Ord, ECF No.9-6, PageID.157.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same two claims presented to and rejected by the Michigan Court of Appeals.  By order entered May 27, 2014, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (Mich. Ord., ECF No. 9-7, PageID.202.)

- 6 -

**Motion for Stay & Abeyance of Petition**

In a motion filed on December 21, 2016, Petitioner moved to stay the petition and hold it in abeyance pending his exhaustion of claims related to newly discovered evidence.  He alleges that he can now show actual innocence, based on a new affidavit from the victim.  In her brief affidavit, the victim avers as follows:

> My mom accused Adam Hitsman of having sexual relations with me.  It wasn't true[.]  Adam never put any thing in my body.  Because I was 12 years old I didn't dare stand up to my mother or call my mother a liar.  She scared m[e.]

> I would testify to this in court.

> P.S.  Adam J. Hitsman never ever touched in a sexual manner or with any sexual intentions when he would hug me.

(Attach. A to Mot. to Stay, ECF No. 11, PageID.259.)

The addition of a new claim of actual innocence would render Petitioner's habeas application "mixed."  Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies.  However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review.  This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations  period is not tolled during the pendency of a federal habeas petition.  As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions.  *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002).  In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the

unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. *Id.*; *see also Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

The Supreme Court has held, however, that the type of stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and encouraging petitioners to first exhaust all of their claims in the state courts. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278.

In the instant case, Petitioner cannot meet the *Rhines* standards. Petitioner's sole proposed new claim is one of actual innocence, based on the victim's recantation of her earlier statement. Even assuming that the recantation is valid,[1] Petitioner could not demonstrate entitlement to relief on that basis in this Court.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for

---

[1]Recantations generally are viewed with great suspicion, especially where the affiant has a prolonged relationship with the defendant. *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) ( "[A]ffidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion."); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) ("Recanting affidavits and witnesses are viewed with extreme suspicion."). The timing and circumstances surrounding the recantations renders the "affidavits" offered by Petitioner even more suspect. *See McQuiggin*, 133 S. Ct. at 1935–36 (noting that the timing of newly discovered evidence of innocence is relevant to its reliability); *Freeman v. Trombley*, 483 F. App'x 51, 61 (6th Cir. 2012) (rejecting recantation that occurred ten years after the witness first testified under oath as sufficient to show actual innocence to excuse the untimeliness of the petition); *Giles v. Wolfenbarger*, 239 F.App'x 145, 148 (6th Cir. 2007) (noting that lack of evidence regarding an affidavit's authenticity, the affiant's motivation, and circumstances of the affidavit's execution provided further support for treating a recanting affidavit with caution).

federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence

claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404).   Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court.  *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412.  The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review.  *See Cress*, 484 F.3d at 854 (citing cases). Because the Supreme Court has never recognized a free-standing claim of actual innocence, Petitioner is not entitled to habeas relief on that ground.  Moreover, even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated.  *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case.").  Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Because the new claim Petitioner seeks to exhaust would not entitle him to habeas relief, he is not entitled to a stay during the pendency of his efforts to exhaust the claim in state court.

*Rhines*, 544 U.S. at 277 (holding that granting stay and abeyance requires the presentation of a non-frivolous claim).

## **Habeas Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The

- 12 -

presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

Petitioner contends that the trial court violated his right to due process when it denied his request to withdraw his plea before sentencing.  He also argues that sentencing counsel was ineffective in failing to make reasonable arguments for withdrawing the plea and in making remarks during the plea withdrawal motion that he should have known would cause the court to deny the motion.

Petitioner has not seriously argued that the plea was not knowingly and voluntarily entered. Nor could he. The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark,* 984 F.2d 203, 208 (7th Cir. 1993) (quoting *Alford*, 400 U.S. at 31) ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United*

- 14 -

*States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").   The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).   Finally, the defendant must have available the advice of competent counsel.   *Tollett*, 411 U.S. at 267-68;  *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).   The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.   *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).   Ineffective assistance of counsel will render a plea of guilty involuntary.   *See Hill*, 474 U.S. at 56-57.

In the instant case, defense counsel explained in detail the plea agreement, and Petitioner indicated that he heard and understood that agreement.   The court then placed Petitioner under oath and began the plea inquiry.   Although Petitioner expressed some reluctance to plead guilty at various junctures, he persisted in his intent to plead guilty throughout a lengthy and detailed plea colloquy:

- 15 -

THE COURT:  All right. The name of the offense to which you are going to plead guilty in Count 2 is called kidnapping. This is a felony carrying a maximum penalty of life of incarceration, life in prison.  Do you understand the name of that offense and the maximum possible penalty?

THE DEFENDANT:  Yes, sir.

THE COURT:  The name of the offense in Count 3 that you're going to plead guilty to is called criminal sexual conduct in the third degree.  This is also a felony carrying a maximum penalty of 15 years of incarceration.  Do you understand the name of that offense and the maximum possible penalty?

THE DEFENDANT:  Yes, sir.

THE COURT:  Also, you would be required to register as a sex offender under the Sex Offenders Registration Act as a result of your conviction.  Do you understand that?

THE DEFENDANT:  Yeah.

THE COURT:  I have been handed an Advice of Rights form.  Is that your signature on the bottom right?

THE DEFENDANT:  Yes, sir.

THE COURT:  Did you go over all these rights with Mr. Piper?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand all these rights?

THE DEFENDANT:  As far as I know, yes, sir.

THE COURT: Do you have any question about any of these rights?

THE DEFENDANT: I don't really understand it all, so --

THE COURT:  All right. Were going to go through these again.  I want you to understand, sir -- and I'm going to read this.  You have offered to plead no contest to this matter.  Before accepting your plea, I must determine and be convinced that you understand the following: First, if your plea is accepted, you will not have a trial of any kind and you will be giving up the following rights that you would have at

- 16 -

trial, including the right to be tried by a jury.  So if I accept your plea, you will not have a jury trial.  Do you understand that?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  If I accept your plea, you are giving up your right to be presumed innocent until proven guilty.  Do you understand that?

        THE DEFENDANT:  Yeah.

        THE COURT:  Also, if I accept your plea, you are giving up your right to have the prosecutor prove beyond a reasonable doubt that you are, in fact, guilty.  Do you understand that?

        THE DEFENDANT:  Yeah.

        THE COURT:  If I accept your plea of guilty, you are giving up your right to have the witnesses against you appear at trial, because there will be no trial if I accept your plea.  Do you understand that?

        THE DEFENDANT:  Yeah.

        THE COURT:  Pardon me?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  Likewise, since there will be no trial if I accept your plea, you will not have a right to question any witnesses who would appear against you at trial.  Do you understand that?

        THE DEFENDANT:  Yeah.

        THE COURT:  You're also giving up your right, if I accept your plea, to have the Court order any witnesses you have for the defense to appear at trial because, once again, there would be no trial.  Do you understand that?

        THE DEFENDANT:  Yes, sir.  Can I ask him a question?

        THE COURT:  Absolutely.

        (Discussion between Mr. Piper and the defendant, off the record.)

MR. PIPER:  Now, the Judge's responsibility is to make sure you're doing this freely and voluntarily.  Nobody can force you to do this.  You understand if we had a trial you might win, and, in that case, you would walk scot-free, but if you lost, you are looking at a required minimum of 25 years in prison.  The Judge has no authority to do anything differently than that.  And we've discussed this at length, have we not?

THE DEFENDANT: Yeah.

MR. PIPER:  And we've discussed this with your parents and everyone?

THE DEFENDANT:  It just doesn't seem right.

MR. PIPER:  Well, you are of age and you have to make your own decision now.  Do you want to proceed or do you want to go to trial? You have to make that decision right now.  We have a trial set for tomorrow.

THE DEFENDANT:  I'll proceed.

MR. PIPER:  Okay.

THE COURT:  Proceed with trial or proceed with this process today?

THE DEFENDANT:  This one.

THE COURT:  All right.  I was going over the rights that you're giving up if I accept your plea to this charge.  I want you to understand that if I accept your plea of no contest to this charge you are giving up your right to remain silent during the trial because, once again, there would be no trial.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you're giving up your right to have that silence -- excuse me. You're giving up your right to not have that silence used against you.  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:  You're giving up the right to testify at trial if you wanted to testify because, once again, there will be no trial if you ,wish to accept this plea offer by the prosecutor.  Do you understand that?

THE DEFENDANT: Yes, sir.

- 18 -

THE COURT:  I want you to understand if your plea is accepted any appeal from your conviction and sentence will be by application of leave to appeal and not by right.  Do you understand that?

THE DEFENDANT:  What does that mean?

THE COURT:  That means if you wish to appeal, if I accept your plea of no contest and you wish to appeal this conviction to the Court of Appeals, you have to ask the Court of Appeals for permission to file the appeal.  If you were to go to trial and lose, you would have an automatic right to file an appeal.  Do you understand that?

THE DEFENDANT:  So.

MR. PIPER:  We discussed this, Adam.  That means that if you enter a plea, and you know what sentence is going to be because we have already agreed that you're going to get 16 years in prison, but if you want to appeal that at that point, you would have to get permission from the Court of Appeals.  They don't have to automatically listen to your appeal.

THE DEFENDANT: Okay.

MR. PIPER:  And we've discussed this, have we not?

THE DEFENDANT: Yes.

MR. PIPER:  But if you went to trial, then you could raise on appeal any issues that occurred during the trial.  Do you understand that?

THE DEFENDANT:  Yeah.

MR. PIPER:  Do you? I mean, it's very important that the record reflect that you understand what you're doing here.

THE DEFENDANT:  I don't understand a lot of stuff, but this seems like the best way to go.  That's what I'm told.

THE COURT: As far as the rights that are on this particular Advice of Rights form that I just articulated to you, do you have any further question  on these?  Do you want to look at these again?

THE DEFENDANT:  No, sir.

- 19 -

THE COURT:  Do you understand all these rights that I've gone over?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any question about them?

THE DEFENDANT:  No.

THE COURT:  Okay. Do you understand that if I accept your plea of no contest you are giving up all the trial rights that are listed on this document?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The plea agreement as I understand it is as follows:  Upon your plea and conviction to Counts 2 and 3, Count 1, which is criminal sexual conduct in the first degree and carries a mandatory minimum of 25 years of imprisonment, plus lifetime electronic monitoring after you are released, will be dismissed.  And, in addition, the Court will sentence you on Count 2 to a minimum prison term of 16 years of incarceration and a maximum prison term will be set by the Court.  Is that your understanding of the complete plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Besides the plea agreement, have any other promises been made to you as an inducement that has caused you to enter this plea of no contest?

THE DEFENDANT:  What does that mean?

MR. PIPER:  What the Judge is asking you here is that you have heard the plea agreement we have put on the record.  You're pleading guilty to Counts 2 and 3.  You're going to get 16 years.  And the Judge is saying no other -- you can't later claim that someone else promised you something differently.  This is exactly what you have been promised.  And you have to tell that to the Judge.  Or if you -- if that's not your understanding, you will have to explain it to the Judge.

THE COURT: Is that your understanding of the complete plea agreement that I just articulated?

THE DEFENDANT: Yes, sir.

THE COURT:  Have you been threatened in any way so as to cause you to enter these pleas of no contest?

- 20 -

THE DEFENDANT:  The only thing that I ever thought was a threat was, you know, the difference between 25 and 16.

THE COURT:  All right.

THE DEFENDANT:  That's about it.

THE COURT:  All right. I want you to understand that if I accept your pleas of no contest you are giving up your right to claim that these pleas were a result of any promises or threats that were not disclosed at this hearing or that the decision to plead no contest was not freely made by you.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right. Do you understand what I just said?

THE DEFENDANT:  Not really. There's a lot of big words.  Sorry.

THE COURT:  That's fine.  I want you to understand -- I've already gone through what the plea agreement is.  Did you hear me say that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Besides the plea agreement, have there been any other promises made to you to get you to plead no contest?

THE DEFENDANT:  No, sir.

THE COURT:  And have you been threatened by anyone, aside from the difference between 25 years and 16 years, that has caused you to enter these pleas of no contest?

THE DEFENDANT:  Would being threatened by the so-called victim's mom count?

THE COURT:  How did she threaten you?

THE DEFENDANT:  Like, pretty much she said:  If you get off, you're dead.

THE COURT:  That would be a threat.

THE: DEFENDANT:  That's the only threat I could think of.

- 21 -

MR. PIPER:  You weren't threatened by myself as your attorney; right?

THE DEFENDANT:  Huh-uh (negative).

MR. PIPER:  And you weren't threatened by anyone from the prosecutor's staff?  They came to you and made an offer; right?  And the police didn't threaten you?

THE DEFENDANT: No, sir.

MR. PIPER:  And the Court hasn't threatened you?

THE DEFENDANT:  No, sir.

MR. PIPER:  You feel intimidated somewhat by the victim's mother because she was angry and she said that, but you're not pleading because she has threatened you with death or anything like that, are you?

THE DEFENDANT: A little bit, yeah.

THE COURT:  Well, if you are being intimidated by someone to plead no contest to a crime to which you are innocent, I'm not going to accept your plea.  I mean, if you have been intimidated, we need to know that, because that's improper.  But if you have been threatened or intimidated by anyone, you're not making this plea freely and of your own free choosing, that's a real problem, because our system of justice requires that you enter into this voluntarily, and if you're not, then we need to know that.

THE DEFENDANT:  It's voluntary.

THE COURT:  Are you sure?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you need to talk with anybody before you make that statement?

THE DEFENDANT:  No.

THE COURT:  Are you in fear of your physical safety or emotional safety from the victim's mother if you don't enter these pleas of no contest?

THE DEFENDANT:  Not really.

- 22 -

THE COURT: Okay. Now, I want you to understand that besides the promises made pursuant to the plea agreement, unless you disclose any other threats or any other promises today before me, you can't raise them down the road in an appeal or any other action to try to set aside your plea.  Do you understand that?  If somebody else has threatened you or if anyone has threatened you or anybody has promised you anything to get you to plead no contest, you need to disclose those promises now or those threats now or you forever waive those claims.  Do you understand that?

THE DEFENDANT:  Would it be all right to talk to my family real quick?

THE COURT:  Absolutely.  We'll take a break.  We'll take a five-minute recess.

THE DEFENDANT:  Sorry.

THE COURT:  Not a problem.  This is a big decision.

(Recess taken; proceedings reconvened as follows: )

THE COURT:  All right, we're back on the record in File 11-35853-FC.  Mr. Hitsman is here.  He has had the opportunity to have further discussion with family members and his attorney, and if he needs more time, certainly we'll grant that.  Mr. Piper, where are we at?

MR. PIPER:  Adam, we have discussed, and the Judge was inquiring, as to whether you felt threatened in entering this plea.  Right?  Do you remember that?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  When we broke.  The only thing that you felt somewhat threatened by was the fact that the mother of Loretta made a threat to you, that she would like to see you dead, or something to that effect.  Is that correct?

THE DEFENDANT:  Yes.

MR. PIPER:  But that doesn't have anything to do with the plea agreement or being threatened into entering into a plea.  You have discussed this at length with me many, many times, have you not?

THE DEFENDANT: Yes, sir.

MR. PIPER:  And you have talked to your parents at length over this, as well?

- 23 -

THE DEFENDANT:  Yes, sir.

MR. PIPER:  And we've answered almost every conceivable question there is to answer; right?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  Now, what the Judge is concerned about is he has to be satisfied in his own mind that you're doing this freely and voluntarily and nobody is putting a gun to your head or threatening you in any fashion.  Do you understand that?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  And in terms of the police or the prosecution or myself or anyone else, no one has threatened you; is that correct?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  Now, do you wish to proceed with the taking of the plea?

THE DEFENDANT:  Yes.

MR. PIPER:  Okay.

THE COURT:  Mr. Piper, would you further explore his understanding that unless he raises any further promises or threats today he is foreclosed from raising those in the future?

MR. PIPER:  We have also discussed, and the Judge read to you in the instructions, that if you enter a plea, and we have discussed this, if you enter a plea, then the Court of Appeals has a right to just reject to hear anything about any kind of appeal you would raise on this case.  Do you understand that?  Because you're entering a plea rather than having a trial.

THE DEFENDANT:  Yes, sir.

MR. PIPER:  And we've discussed that, have we not?

THE DEFENDANT:  Yeah.

MR. PIPER:  And if you went to trial, then any issue that was raised as far as evidence or assistance of counsel or any of those issues you could raise.  And by entering a plea, if the Court accepts this plea today, then you are, for all intents and

purposes, closing the door.  You can't later say -- because the Judge is telling you today these are your rights and asking if you understand those rights.  And you tell me you want to plead no contest.  Then you're giving up those rights.  Do you understand that?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  And you probably can't later raise them in the Court of Appeals or with anyone else.

THE DEFENDANT:  Yeah.

MR. PIPER:  Now, do you have any questions about what I just said?

THE DEFENDANT:  No, sir.

MR. PIPER:  Okay.

THE COURT:  So if there are other promises or threats that are out there that you have not disclosed to me today, you can't raise them in the future as a basis for setting aside this plea.  Do you understand that?

THE DEFENDANT:  Yes, sir.

MR. PIPER:  Are you pleading guilty freely, voluntarily and -- excuse me.  Are you pleading no contest freely, voluntarily, and of your own free choosing?

THE DEFENDANT:  Yes, sir.

THE COURT:  Regarding Count 2, the charge of kidnapping, how do you plead?

THE DEFENDANT:  No contest.

THE COURT:  Regarding Count 3, the charge of criminal sexual conduct in the third degree, how do you plead?

THE DEFENDANT:  No contest.

THE COURT:  All right.  The Court has had the opportunity to review the Sheriff's Department Report Number 2011-08110155.  That report indicates that on or about August 11, 2011, in Grand Haven Township, Ottawa County, Michigan, specifically on or at 13555 Pebblebrook Drive, that Adam Hitsman, an adult, had

- 25 -

sexual intercourse with the victim, whose name is Loretta Susanna-Faith Fettig, while Loretta Susanna-Faith Fettig was the age of 12 years and 7 months. Specifically, the report indicates that he had digital/vaginal penetration and, also, penis/vaginal penetration, as set forth by Mr. Hitsman's own statement to law enforcement. The Court notes that the mother of the victim believed there was some suspicious activity at the home. She arrived at the home and attempted to extricate her daughter from the bedroom or room where her daughter was with Mr. Hitsman, attempted to extricate her daughter out. However, Mr. Hitsman would not unlock the door, blocked the door by -- blocked the attempt by the mother to get her daughter out of the room. The Court, under the case law, will accept the plea to Count 2, kidnapping, and also to count 3, criminal sexual conduct in the third degree, as a result of reviewing the report, finding that the crime of criminal sexual conduct in the first degree has been satisfied, specifically under two theories, number one, digital/vaginal penetration and, number two, penis/vaginal penetration. That certainly would support criminal sexual conduct in the third degree involving the force or coercion theory as alleged. And, furthermore, the review of the report and accompanying circumstances of the plea agreement support the charge of kidnapping, as well, in that Mr. Hitsman knowingly restrained, by keeping the door words [sic], she was restrained from coming in the room because you kept her from coming in the room? That's what the police report says. You've taken a different version in your mind, but the police report does contain that information; right?

THE DEFENDANT: That's what it says, yeah.

THE COURT:  Well, I'll use that as an independent basis to support the charge. I also think the CSC-I in the plea agreement will support it, as well, but if there's an issue, I think there's two theories. And as far as concerns regarding that following in the PSI, we can resolve that in chambers by making the appropriate deletions or additions. The Court finds the plea is voluntarily made, there is a factual basis as I have articulated. Mr. Piper, are you aware of any other promises or threats that have not been disclosed that has caused your client to plead no contest?

MR. PIPER:  None.

THE COURT:  Ms. Mulder?

MS. MULDER:  No, Your Honor.

THE COURT:  Ms. Mulder, has the Court complied with the court rule?

MS. MULDER: Yes, Your Honor.

(Plea Tr., ECF No. 9-4, PageID.110-128.)

Based on the answers Petitioner provided on the record at the plea hearing, there exists no doubt that Petitioner understood the details of the plea agreement, the consequences of his plea, the rights he was waiving, and the potential consequences of the original charges he faced. Petitioner was represented by active and attentive counsel, and Petitioner makes no argument that his attorney at the plea proceeding rendered ineffective assistance of counsel.  Further, the plea was of substantial benefit to Petitioner, given that he would have faced a minimum sentence of 25 years if he had been convicted by a jury of CSC I, the original charged offense.  His plea, therefore, was knowing, voluntary and intelligent.

Nevertheless, Petitioner argues that he should have been permitted to withdraw his plea before sentencing, because he had maintained his innocence and believed himself to be threatened.  He also contends that counsel at sentencing was ineffective, because he failed to make arguments that would have helped Petitioner with his motion to withdraw the plea and, instead, made representations that he should have known would cause the court to deny the motion.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Moreover, to the extent that Petitioner now intends to claim that he was actually innocent and felt threatened into entering his plea, his claim is foreclosed by his sworn statements at the plea hearing.  When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.*  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

As discussed, the plea transcript amply demonstrates the voluntariness of his plea. Moreover, Petitioner acknowledged that he understood that, if he pleaded no contest, he was giving up his right to challenge the evidence at trial.  (Plea Tr., ECF No. 9-4, PageID.125.)  And he repeatedly acknowledged that he was not being threatened into entering his no-contest plea.  (*Id.*, PageID.121, 123-126.)  Petitioner's belated claims to the contrary fall far short of overcoming the presumption of correctness afforded the uncontested findings at the plea proceedings.

Further, to the extent that Petitioner contends that counsel was ineffective in arguing the state-law motion to withdraw the plea, Petitioner's claim is without merit.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which

to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  In addition, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner cannot demonstrate either prong of the *Strickland* standard.   Under Michigan law, the standard for withdrawing a plea after acceptance and before sentencing is provided in Michigan Court Rule 6.310(B):

> (1) a plea may be withdrawn on the defendant's motion or with the defendant's consent only in the interest of justice, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea.  If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by subrule (C).

> (2) the defendant is entitled to withdraw the plea if

> (a) the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the agreement; the trial court shall then state the sentence it intends to impose, and provide the defendant the opportunity to affirm or withdraw the plea; or

> (b) the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated; the trial court shall provide the defendant the opportunity to affirm or withdraw the plea, but shall not state the sentence it intends to impose.

MICH. CT. R. 6.310(B)(1)-(2).  Petitioner does not even argue that he has a right to withdraw the plea under the provisions of Rule 6.310(B)(2), and sentencing counsel properly admitted that no basis existed under that provision.  Petitioner claims, however, that withdrawing the plea would be in the "interest of justice" and would not prejudice the prosecution within the meaning of Rule 6.310(B)(1).

To support withdrawal of a plea "in the interest of justice" under MCR 6.310(B), a defendant has the burden of establishing "'a fair and just reason for withdrawal of the plea.'" *People v. Wilhite*, 618 N.W.2d 386, 391 (Mich. Ct. App. 2000) (quoting *People v. Jackson*, 513 N.W.2d 206, 209 (Mich. Ct. App. 1994).  "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge.  Things that are not considered fair and just reasons are

dissatisfaction with the sentence or incorrect advice from the defendant's attorney."  *People v. Fonville*, 804 N.W.2d 878, 887 (Mich. Ct. App. 2011) (citing *Wilhite*, 618 N.W.2d at 389).

   Habeas counsel argues that sentencing counsel could have argued numerous "fair and just reasons":  (1) actual innocence; (2) an unknowing and involuntary plea; and (3) the failure of sentencing counsel to advocate on his behalf.  (*See* Mem. of Law in Supp. of Pet., ECF No. 2, PageID.17, 20, 23.)  In reality, however, the three alleged bases for withdrawing the plea are mere components of a single claim:  that the plea was not knowing and voluntary because Petitioner maintained his innocence, but was coerced into pleading no contest because he was "mentally impaired," (*Id.*, PageID.18), threatened by the victim's mother, and pressured by defense counsel at the plea.  As previously discussed, the plea transcript reveals that, despite his misgivings, Petitioner knowingly and voluntarily chose to plead guilty.  The plea colloquy does not support a claim of actual innocence.  Moreover, despite the fact that certain of Plaintiff's claims of innocence were recorded in the presentence report, Petitioner's own statements are of little evidential value in a claim of actual innocence.

   In addition, notwithstanding habeas counsel's characterization, defense counsel at the plea hearing did not "pressure" Petitioner into pleading guilty.  (Mem. in Supp. of Pet., ECF No. 2, PageID.23.)  As evidenced by the lengthy plea colloquy, which has been quoted in its entirety, counsel and the court provided Petitioner every opportunity to understand and decide whether to plead no contest.  More importantly, Petitioner has never argued that plea counsel was ineffective for pressuring Petitioner, and he is not entitled to relief in this Court on that basis.  *See* 28 U.S.C. § 2254(b)(1) (barring relief in federal court if a claim is not exhausted in the state courts).  Further, although Petitioner discussed at his plea hearing the threat made by the victim's mother, he expressly

told the trial court that he was not pleading guilty because of the threat.[2]  Finally, Petitioner has never

suggested that he was not competent to plead guilty and he does not do so now.

       As a result, the record facing sentencing counsel did not support any realistic

argument for withdrawing the plea.  The Sixth Circuit repeatedly has recognized that counsel cannot

be ineffective for failing to raise an issue that lacks merit.  *Willis v. Smith*, 351 F.3d 741, 745 (6th

Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Smith v.

Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither

professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner therefore fails to demonstrate that sentencing counsel's performance was inadequate.

       Petitioner also cannot demonstrate the requisite prejudice.  The trial court examined

the claim of innocence in light of the plea colloquy, despite the fact that sentencing counsel did not

raise it.  (*See* Sentencing Hr'g Tr., ECF No. 9-5, PageID.149-151.)  Because the trial court actually

considered the claim of actual innocence and rejected it as unsupported, counsel's failure to raise the

issue did not deprive Petitioner of a review of his claim.  Petitioner therefore fails to demonstrate that

he was prejudiced by counsel's failure to raise the argument.

       In sum, Petitioner utterly fails to demonstrate that counsel was ineffective, much less

that the Michigan Court of Appeals erred in rejecting his claim under the doubly deferential standard

owed to such determinations on habeas review.  He therefore is not entitled to habeas relief.

---

[2]It is worth noting that Petitioner alleged that the victim's mother had told him, "If you get off you're dead."
Even if the threat were taken seriously, such a threat cannot be characterized as an attempt to pressure Petitioner into
pleading guilty.  Instead, it threatened action if he escaped punishment altogether.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the motion for stay and abeyance (ECF No. 11) be denied.  I also recommend that the habeas corpus petition be denied.

Dated: March 24, 2017                                    /s/ Ray Kent
                                                                    Ray Kent
                                                                    United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).